**GAUNTLETT & ASSOCIATES**
David A. Gauntlett (SBN 96399)
info@gauntlettlaw.com
James A. Lowe (SBN 214383)
jal@gauntlettlaw.com
5 Pelican Vista Dr.
Newport Coast, CA 92657
Telephone:  (949) 553-1010
Facsimile:   (949) 553-2050

Attorneys for Plaintiffs
WEB DESIGN AND CONSULTING
SERVICES, INC. and AD.COM
INTERACTIVE MEDIA, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| WEB DESIGN AND CONSULTING SERVICES, INC., a California corporation and AD.COM INTERACTIVE MEDIA, INC., a California corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT FOR:** <br><br> **DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING** <br><br> **JURY TRIAL DEMANDED** |

In this insurance coverage case, WEB DESIGN AND CONSULTING SERVICES, INC. (hereinafter "WDCS") and AD.COM INTERACTIVE MEDIA, INC. (hereinafter "Ad.com") (collectively "Plaintiffs" or "the Insureds"), sue their employment liability insurer, Defendant TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA (hereinafter "Travelers"), seeking: **(i)** a judicial declaration that Travelers has a duty to defend WDCS and Ad.com in the underlying litigation styled as *Ad.net, Inc., Michael Aragon, Sanford Lechner and Paul Schuster v. Web Design and Consulting Services, Inc., Ad Media and Ad.Com Interactive Media, Inc., and Does 1 through 20, inclusive.,* Case No. 24SMCV03573, Los Angeles County, Superior Court of the State of California (the "Ad.net Action"); **(ii)** a judicial declaration that Travelers has breached its contract with WDCS and Ad.com in failing to properly defend them in the Ad.net Action and owes Plaintiffs damages for its breach; **(iii)** a judicial declaration that WDCS and Ad.com are entitled to be represented by independent defense counsel in the Ad.net Action; **(iv)** a judicial declaration that Travelers must timely reimburse WDCS and Ad.com for all reasonable post-tender defense expenses, in excess of the policy retention, incurred in connection with the Ad.net Action, including the costs of the cross-complaint and other pending strategically defensive claims filed against the individual cross-defendants/plaintiffs Michael Aragon, Sanford Lechner and Paul Schuster in Maine, Florida and New York, respectively, plus prejudgment interest at the applicable legal rate from the date of each defense invoice; and **(v)** a judicial declaration that Travelers has breached its duty of good faith and fair dealing toward its insureds WDCS and Ad.com and owes Plaintiffs damages for its breach.

## THE PARTIES

1.      Plaintiff WDCS is a corporation duly organized and existing under the laws of the State of California with its principal place of business located at 6320 Canoga Avenue, Woodland Hills, California 91367. Plaintiff also uses Ad.com as a dba.

2.    Ad.com is a corporation duly organized and existing under the laws of the State of California with its principal place of business located at 6320 Canoga Avenue, Woodland Hills, California 91367. Ad.com provides digital marketing and advertising services to advertisers, publishers, and consumers. Plaintiffs WDCS and Ad.com also use dba "AdMedia".

3.    On information and belief, Defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

4.    On information and belief, Defendant TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA is licensed to sell and does sell liability insurance in the State of California and does business regularly in the State of California.

## JURISDICTION

5.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Travelers.

6.    On information and belief, there is more than $75,000 in controversy in this action.

## VENUE

7.    Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1391(a), (b), (c) and (d).

8.    The underlying action for which the Insureds seek defense, the Ad.net Action, was filed and is pending in the Los Angeles Superior Court within this district and Travelers owes its Insureds a defense in this federal judicial district.

9.    WDCS and Ad.com have operated in this judicial district where the underlying Ad.net Action alleges it has committed wrongful acts which are potentially covered by Travelers' insurance Policy sold to WDCS.

10.    This federal judicial district is the place of performance under the Policy and California law governs Travelers' obligations to the Insureds.

## THE TRAVELERS POLICY

11.    Travelers issued to WDCS, as the Named Insured, a primary employment practices liability insurance (EPLI), policy number 107031924, for the period January 10, 2024 to January 10, 2025 with a retroactive date covering the period beginning January 10, 2019 (the "Policy"). A copy of the Policy is attached as **Exhibit "1."**

12.    Travelers' Policy promises in its Section I Insuring Agreement that "The Company will pay on behalf of the **Insured**, **Loss** for any **Employment Claim** first made during the **Policy Period** …for a **Wrongful Employment Practice**."[1] **[Exhibit "1," p. 29/51]** ITEM 7 of the Policy's Declarations further specifies by checkmark that the Policy's "TYPE OF LIABILITY COVERAGE" is "Duty-to-Defend" rather than Reimbursement. **[Exhibit "1," p. 6/51]**

13.    Pertinent language from the Policy's coverage form, number EPL 3001, includes:

**III. CONDITIONS**

. . .

**E. CLAIM DEFENSE**

1. If Duty-to-Defend coverage is provided with respect to this **Liability Policy** as indicated in ITEM 7 of the Declarations, the Company will have the right and duty to defend any **Claim** covered by a **Liability Coverage**, even if the allegations are groundless, false or fraudulent, including the right to select defense counsel with respect to such **Claim**; provided, that the Company will not be obligated to defend or to continue to defend any **Claim** after the applicable limit of liability has been exhausted by payment of **Loss**. **[Exhibit "1," pp. 15/51]**

---

[1] Bolded terms in the Policy are defined terms.

. . .

## SECTION II – DEFINITIONS

A.    **Claim** means an **Employment Claim** … A **Claim** is deemed to be made on the earliest date that any Executive Officer first receives written notice of such **Claim**.

B.    **Claimant** means:

1. a past, present or future **Employee** of or applicant for employment with the **Insured Organization**;

2. a governmental entity or agency, including the Equal Employment Opportunity Commission or similar federal, state or local agency, when acting on behalf of or for the benefit of a past, present or future **Employee** or applicant for employment with the **Insured Organization**; or

3. any **Independent Contractor**.

D.    **Employee** means a natural person whose labor or service is engaged by and directed by the **Insured Organization** and:

1. who is on the payroll of the **Insured Organization,** including:

a. any in-house general counsel of the **Insured Organization**; and

b. any other full-time, part-time, and seasonal worker;

2. who is a volunteer or temporary worker; or

3. whose services have been leased by the **Insured Organization**.

**Independent Contractors** are **not Employees**. The status of an individual as an **Employee** will be determined as of the date of the alleged **Wrongful Act**.

E.    **Employment Agreement** means any express or implied

employment agreement regardless of the basis in which such agreement is alleged to exist, other than a collective bargaining agreement.

F.    **Employment Claim** means:

1. a written demand for monetary damages or non-monetary relief;

2. a civil proceeding commenced by service of a complaint or similar pleading… against an Insured by or on behalf of or for the benefit of a **Claimant** … for a **Wrongful Employment Practice** …

H**.**    **Independent Contractor** means any natural person who is not an **Employee** but who performs labor or service for the **Insured Organization** pursuant to a written contract or agreement. The status of an individual as an **Independent Contractor** will be determined as of the date of the alleged **Wrongful Act**.

I.    **Insured** means the **Insured Persons** and the **Insured Organization**.

J.    **Insured Organization** means the **Named Insured**, any **Subsidiary** …

L.    **Loss** means **Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**, including settlements; judgments; back and front pay; compensatory damages; punitive or exemplary damages or the multiple portion of any multiplied damage award if insurable under the applicable law most favorable to the insurability of punitive, exemplary, or multiplied damages; prejudgment and postjudgment interest; and legal fees and

expenses of a Claimant … **"Loss"** does not include:

1. civil or criminal fines; sanctions; liquidated damages other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act; payroll or other taxes; or damages, penalties or types of relief deemed uninsurable under applicable law;

2. future compensation, including salary or benefits, for a Claimant … who has been or will be hired, promoted or reinstated to employment pursuant to a settlement, court order, judgment, award or other resolution of a Claim; or that part of any judgment or settlement which constitutes front pay, future monetary losses including pension and other benefits, or other future economic relief or the value or equivalent thereof, if the **Insured** has been ordered, or has the option pursuant to a judgment, order or other award or disposition of a **Claim**, to promote, accommodate, reinstate, or hire the **Claimant** … to whom such sums are to be paid, but fails to do so;

3. medical, pension, disability, life insurance, Stock Benefit or other similar employee benefits, except and to the extent that a judgment or settlement of a **Claim** includes a monetary component measured by the value of:

a. medical, pension, disability, life insurance, or other similar employee benefits; or

b. Stock Benefits of an **Insured Organization** whose equity or debt securities are not publicly traded, including on a stock exchange or another organized securities market, as consequential damages for a **Wrongful Act**; or

4. any amount allocated to non-covered loss pursuant to Section III. CONDITIONS P. ALLOCATION of the Liability Coverage Terms and Conditions.

X.    **Wrongful Act** means:

1. a **Wrongful Employment Practice** occurring in the course of or arising out of a **Claimant's** employment, application for employment or performance of services with the **Insured Organization** ….

All **Related Wrongful Acts** are a single **Wrongful Act** for purposes of this Liability Coverage, and all **Related Wrongful Acts** will be deemed to have occurred at the time the first of such **Related Wrongful Acts** occurred whether prior to or during the **Policy Period**.

Y.    **Wrongful Employment Practice**[2] means any actual or alleged: …

6. breach of **Employment Agreement**; …

8. employment-related misrepresentation; …

9. employment-related defamation, including libel or slander, or invasion of privacy; …

11. wrongful discipline, wrongful demotion, denial of training, deprivation of career opportunity, denial or deprivation of seniority, or evaluation; …

12. employment-related wrongful infliction of emotional distress;

13. negligent hiring, supervision of others, training, or retention committed or allegedly committed by any Insured,

---

[2] Endorsement EPL-19047: WAGE AND HOUR LAW AND WRONGFUL EMPLOYMENT PRACTICE

but only if such act is alleged in connection with a Wrongful Employment Practice set forth in 1. through 12. above; provided that the Claim alleging the negligent hiring, supervision of others, training, or retention is brought by or on behalf of any Claimant…

Wrongful Employment Practice also means any actual or alleged employment-related disparagement …[3]

Wrongful Employment Practice also means negligent employment reference.[4] **[Exhibit "1," pp. 29-34/51]**

## SECTION III – EXCLUSIONS

**B.    EXCLUSIONS APPLICABLE TO LOSS, OTHER THAN DEFENSE EXPENSES**

1. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking costs and expenses incurred or to be incurred to comply with an order, judgment or award of injunctive or other equitable relief of any kind, or that portion of a settlement encompassing injunctive or other equitable relief, including actual or anticipated costs and expenses associated with or arising from an **Insured's** obligation to provide reasonable accommodation under, or otherwise comply with, the Americans With Disabilities Act or the Rehabilitation Act of 1973, including amendments thereto and regulations promulgated thereunder, or any similar or related federal, state or local law or regulation.

---

[3] Endorsement EPL-19020: EMPLOYMENT-RELATED DISPARAGEMENT AND FALSE IMPRISONMENT ENDORSEMENT

[4] Endorsement EPL-19057: AMEND WRONGFUL EMPLOYMENT PRACTICE DEFINITION

2. The Company will not be liable for **Loss**, other than **Defense Expenses**, for any **Claim** seeking severance pay, damages or penalties under an express written **Employment Agreement,** or under any policy or procedure providing for payment in the event of separation from employment; or sums sought solely on the basis of a claim for unpaid services. **[Exhibit "1," p. 36/51]**

### THE UNDERLYING AD.NET ACTION

14.    On July 25, 2024, underlying plaintiffs Ad.net, Inc., Michael Aragon, Sanford Lechner and Paul Schuster filed the Ad.net Action against WDCS, Ad.com and "AdMedia" in the Superior Court of Los Angeles County, California asserting four causes of action based primarily upon the allegation that WDCS and Ad.com have attempted and are continuing to attempt to enforce non-compete employment agreements against the individual plaintiffs Aragon, Lechner and Schuster which are alleged to be unenforceable and illegal under California law: (1) Statutory Action for Damages and Injunctive Relief, California Business & Professions Code section 16600 *et seq.*, (2) Unfair Competition under Business & Professions Code section 17200 *et seq.*, (3) Intentional Interference with Contractual Relations, and (4) Declaratory and Injunctive Relief. A copy of the Ad.net Action Complaint is attached as **Exhibit "2."**

15.    The Complaint seeks compensatory damages and other relief for the underlying plaintiffs.

### THE AD.NET ACTION ALLEGES POTENTIALLY COVERED CLAIMS

16.    The Complaint includes the following allegations against the Insureds, which they deny:

¶ 1    Ad.net is a California corporation with its principle place of business located in Los Angeles County, California, at 10100 Santa Monica Blvd #110, Los Angeles, California

90067. Ad.net is built to connect advertisers to unique intent-driven audiences through its marketplace. Ad.net uses a sophisticated technology stack to give advertisers access to new customers and increased market share. Ad.net helps advertisers grow efficiently, and by doing so, Ad.net helps publishers succeed.

¶2    Web Design and Consulting Services, Inc., is a California company headquartered at 6320 Canoga Ave. Suite 200, Woodland Hills, California 91367. Generally speaking, Web Design and Consulting Services is in the same business as Ad.net.

¶3    Defendant Ad.com Interactive Media Inc. is a California company headquartered at 6320 Canoga Ave. Suite 200, Woodland Hills, California 91367. Generally speaking, Ad.com Interactive Media Inc. is in the same business as Ad.net.

¶4    Defendant Ad Media is a California company headquartered at 6320 Canoga Ave. Suite 200, Woodland Hills, California 91367. Generally speaking, Ad Media is in the same business as Ad.net.

¶7    Plaintiff Michael Aragon is an individual residing in Maine, is a current employee of plaintiff Ad.net, and is a former employee of one or  more of the defendants herein.

¶8    Plaintiff Sanford Lechner is an individual residing in Florida, is a current employee of plaintiff Ad.net, and is a former employee of one or more of the defendants herein.

¶9    Plaintiff Paul Schuster is an individual residing in

New York, is a current employee of plaintiff Ad.net, and is a former employee of one or more of the defendants herein.

¶ 10   The acts alleged herein causing damages and injury to plaintiffs occurred within the County of Los Angeles, State of California. The acts complained of herein all occurred within the applicable statutes of limitations for the causes of actions alleged.

¶ 11   In 2024 plaintiff Ad.net hired Michael Aragon, Sanford Lechner, and Paul Schuster to work as employees and sales representatives for plaintiff Ad.net. Plaintiff Ad.net is informed and believes and thereupon alleges that one or more of these three individuals, Michael Aragon, Sanford Lechner, and Paul Schuster were subject to non-compete agreements with one or more of their former employers, Ad Media, Ad.com Interactive Media Inc. and/or Web Design and Consulting Services Inc. In order to attempt to prevent Michael Aragon, Sanford Lechner, and Paul Schuster from leaving their employment and becoming employed with plaintiff Ad.net, defendants and each of them have sought to enforce these non-compete agreements against these individuals, Michael Aragon, Sanford Lechner, and Paul Schuster.

¶ 12     Under California law, non-compete agreements between an employer and an employee are unenforceable and against California public policy. California Business & Professions Code section 16600(a) provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or

business of any kind is to that extent void." California Business & Professions Code section 16600(b)(1) provides: "This section shall be read broadly, in accordance with *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, to void the application of any noncompete agreement in an employment context, or any noncompete clause in an employment contract, no matter how narrowly tailored, that does not satisfy an exception in this chapter." *See e.g., Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937*; Application Group, Inc. v. Hunter Group, Inc*. (1998) 61 Cal.App.4th 881; *Kolani v. Gluska* (1998) 75 Cal.Rptr.2d 257, 64 Cal.App.4th 402; *Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853; and *Loral Corp. v. Moyes* (1985) 174 Cal.App.3d 268. None of the exceptions contained in Business & Professions Code sections 16601, 16602, or 16602.5 apply here.

¶ 13  Business & Professions Code section 16600.1 provides in full as follows. "(a) It shall be unlawful to include a noncompete clause in an employment contract, or to require an employee to enter a noncompete agreement, that does not satisfy an exception in this chapter. (b) (1) For current employees, and for former employees who were employed after January 1, 2022, whose contracts include a noncompete clause, or who were required to enter a noncompete agreement, that does not satisfy an exception to this chapter, the employer shall, by February 14, 2024, notify the employee that the noncompete clause or noncompete agreement is void. (2) Notice made under this subdivision

shall be in the form of a written individualized communication to the employee or former employee, and shall be delivered to the last known address and the email address of the employee or former employee. (c) A violation of this section constitutes an act of unfair competition within the meaning of Chapter 5 (commencing with Section 17200)." Despite the fact that defendants and each of them are each and all California headquartered businesses, defendants and each of them did not comply with Section 16600.1, did not provide notice to Michael Aragon, Sanford Lechner, and/or Paul Schuster that any noncompete agreement contained in their employment agreements was void, and instead defendants sought and continue to seek to enforce these illegal noncompete agreements against Michael Aragon, Sanford Lechner, and Paul Schuster and against plaintiff Ad.net, to the injury of these three individuals and each of them and to the injury of plaintiff Ad.net. Pursuant to Business & Professions Code sections 16600, 16600.1 and 17200, the actions of defendants and each of them constitutes unfair competition under California law.

¶ 14   Business & Professions Code section 16600.5 provides in full as follows. "(a) Any contract that is void under this chapter is unenforceable regardless of where and when the contract was signed. (b) An employer or former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of

California. (c) An employer shall not enter into a contract with an employee or prospective employee that includes a provision that is void under this chapter. (d) An employer that enters into a contract that is void under this chapter or attempts to enforce a contract that is void under this chapter commits a civil violation. (e) (1) An employee, former employee, or prospective employee may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both. (2) In addition to the remedies described in paragraph (1), a prevailing employee, former employee, or prospective employee in an action based on a violation of this chapter shall be entitled to recover reasonable attorney's fees and costs."

FIRST CAUSE OF ACTION

Statutory Action for Damages and Injunctive Relief, Bus. & Prof. Code 16600 et seq.

¶ 16. Under California law, non-compete agreements between an employer and an employee are unenforceable and against California public policy, as provided by California Business & Professions Code section 16600 *et seq.* and decisional law thereunder.

¶ 17. Defendants and each of them have asserted and attempted to enforce noncompete agreements against individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster and against plaintiff Ad.net in an attempt by defendants to intimidate plaintiffs and each of them, to try to dissuade individual plaintiffs Michael Aragon, Sanford Lechner, and/or Paul Schuster from being employed by

plaintiff Ad.net, to interfere with the employment, income and livelihoods of individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster and to deprive plaintiff Ad.net of the services of these individuals and the revenue and income that Ad.net reasonably anticipates receiving as the benefit of services rendered as employees by Michael Aragon, Sanford Lechner, and Paul Schuster. All of the foregoing acts by defendants and each of them were intended to cause, and has caused, and continues to cause injury and damages to plaintiffs and each of them in an amount subject to proof at trial and in excess of the jurisdictional limits of this Court.

¶ 18. California Business & Professions Code section 16600.5 provides that an employee, former employee, or prospective employee may bring a private action to enforce these provisions of law, for injunctive relief or the recovery of actual damages, or both. In addition to the remedies described in paragraph (1), a prevailing employee, former employee, or prospective employee in an action based on a violation of this chapter shall be entitled to recover reasonable attorney's fees and costs. An employee, former employee, or prospective employee may bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both. (2) In addition to the remedies described in paragraph (1), a prevailing employee, former employee, or prospective employee in an action based on a violation of this chapter shall be entitled to recover reasonable attorney's fees and costs. Under Section

Complaint

16600.5, plaintiffs are entitled to a statutory cause of action. Plaintiffs and each of them are entitled to damages, in an amount or amounts subject to proof at trial, due to the actions of defendants and each of them. Plaintiffs and each of them are also entitled to a permanent injunction against defendants and each of them, to declare void and unenforceable defendants noncompete agreements with each and all of the individual plaintiffs, and to prevent any action against individual plaintiffs or against plaintiff Ad.net by defendants and each of them to enforce said agreements, for defendants to seek damages or other relief from plaintiffs and each of them, and to reimburse plaintiffs and each of them for sums or property wrongfully taken from plaintiffs by defendants and each of them. Plaintiffs and each of them are also entitled to recovery from defendants and each of them of plaintiffs' reasonable attorney's fees and costs.

SECOND CAUSE OF ACTION

Unfair Competition

¶ 20. California Business & Professions Code section 17200 provides as follows. "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business & Professions Code."

¶ 21. California Business & Professions Code section 17203 provides in relevant part as follows. "Any person who engages, has engaged, or proposes to engage in unfair

competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." California Business & Professions Code section 17201 provides: "As used in this chapter, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." California Business & Professions Code section 17205 provides "the remedies or penalties provided by this chapter are cumulative to each other and to the remedies or penalties available under all other laws of this state."

22. Under California law, non-compete agreements between an employer and an employee are unenforceable and against California public policy, as provided by California Business & Professions Code section 16600 *et seq.* and decisional law thereunder. Defendants and each of them have obtained noncompete agreements between each of them and former employees plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster and sought to enforce such noncompete agreements against these individual plaintiffs and against plaintiff Ad.net in an attempt by defendants to intimidate plaintiffs and each of them, to try to dissuade individual

17

plaintiffs Michael Aragon, Sanford Lechner, and/or Paul Schuster from being employed by plaintiff Ad.net, to interfere with the employment, income and livelihoods of individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster and to deprive plaintiff Ad.net of the services of these individuals and the revenue and income that Ad.net reasonably anticipates receiving as the benefit of services rendered as employees by Michael Aragon, Sanford Lechner, and Paul Schuster. All of the foregoing acts by defendants and each of them were intended to cause, and has caused, and continues to cause injury and damages to plaintiffs and each of them.

¶ 23. In obtaining and continuing to attempt to enforce noncompete agreements in violation of California law and public policy, defendants and each of them have engaged in unfair business practices and violated Business & Professions Code section 16600.1

¶ 24. Defendants and each of them have failed or refused to comply with California Business & Professions Code section 16600.5, which additionally provides that an employee, former employee, or prospective employee may bring a private action to enforce these provisions of law, for injunctive relief or the recovery of actual damages, or both.

¶ 25. The actions of defendants and each of them are unlawful and constitute unfair competition under California law.

¶ 26. All of the foregoing acts by defendants and each of them were intended to cause, and has caused, and continues

to cause injury and damages to plaintiffs and each of them. Plaintiffs and each of them are entitled to damages, in an amount or amounts subject to proof at trial, due to the actions of defendants and each of them. Plaintiffs and each of them are also entitled to a permanent injunction against defendants and each of them, to declare void and unenforceable defendants noncompete agreements with each and all of the individual plaintiffs, and to prevent any action against individual plaintiffs or against plaintiff Ad.net by defendants and each of them to enforce said agreements, for defendants to seek damages or other relief from plaintiffs and each of them, in an amount subject to proof at trial and in excess of the jurisdictional limits of this Court, and to reimburse plaintiffs and each of them for sums or property wrongfully taken from plaintiffs by defendants and each of them. Plaintiffs and each of them are also entitled to recovery from defendants and each of them of their reasonable attorney's fees and costs.

THIRD CAUSE OF ACTION

Intentional Interference with Contractual Relations

¶ 29. There exists and has existed a contractual employment relationship between Ad.net and each of the individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster. Defendants and each of them, who are not themselves parties to the contracts between plaintiff Ad.net and individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster, have intentionally interfered with these contracts between Ad.net and each of the individual

plaintiffs.

¶ 30. Defendants and each of them knew or should have known of the contracts and employment relationships between plaintiff Ad.net and individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster.

¶ 31. The conduct and actions of defendants and each of them, as aforementioned, has been done and is being done in an attempt to disrupt and has prevented performance of the contracts and employment relationships between plaintiff Ad.net and individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster. Defendants have sought to prevent performance, and/or made performance more expensive or difficult.

¶ 32. Defendants and each of them intended to disrupt the performance of each of these contracts and employment relationships between plaintiff Ad.net and individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster, and/or defendants knew or should have known that disruption of performance was certain or substantially certain to occur. Defendants actions and conduct, including obtaining, asserting and continuing to attempt to enforce noncompete agreements with the individual plaintiffs, and attempting to disrupt the employment relationship between Ad.net and each of the individual plaintiffs, violates California law and public policy, and is independently wrong in and of itself.

¶ 35. Defendants and each of them by the aforementioned acts and conduct have tried to intimidate plaintiffs and each

of them, to try to dissuade individual plaintiffs Michael Aragon, Sanford Lechner, and/or Paul Schuster from being employed by plaintiff Ad.net, to attempt to dissuade Ad.net from employing these individuals, to interfere with the employment, income and livelihoods of individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster and to deprive plaintiff Ad.net of the services of these individuals and the revenue and income that Ad.net reasonably anticipates receiving as the benefit of services rendered as employees by Michael Aragon, Sanford Lechner, and Paul Schuster. All of the foregoing acts by defendants and each of them were intended to cause, and has caused, and continues to cause injury and damages to plaintiffs and each of them in an amount subject to proof at trial and in excess of the jurisdictional limits of this Court.

## FOURTH CAUSE OF ACTION

## Declaratory and Injunctive Relief

¶ 37. As aforementioned, due to the actions and conduct of the defendants and each of them, in obtaining, asserting, and continuing to attempt to assert noncompete agreements against and to the injury of plaintiffs and each of them, and disrupting the employment relationship between Ad.net and the individual plaintiffs, there exists an actual controversy relating to the legal rights and duties of the respective parties, defendants and each of them and plaintiffs and each of them. Plaintiffs allege that the efforts by defendants and each of them to assert and attempt to enforce the aforementioned noncompete agreements is unlawful.

Defendants insist upon such conduct, to the past and continuing injury of plaintiffs and each of them.

¶ 38. As aforementioned, there is a substantial connection between the defendants' conduct and injury in the plaintiffs, and there exists redressability that the Court could order. Plaintiffs and each of them request that the Court adjudge and declare the rights and duties of the parties hereto, that the Court declare the actions of defendants and each of them in obtaining and attempting to assert and enforce noncompete agreements between defendants and the individual plaintiffs and each of them are void and unlawful, and plaintiffs request the issuance of a permanent injunction to bar defendants and each of them from asserting and enforcing said noncompete agreements, and to bar defendants and each of them from any relief or damages from any plaintiffs herein arising from the termination of the employment of individual plaintiffs and each of them with defendants and each of them, and the employment of individual plaintiffs by plaintiff Ad.net. **[Exhibit "2," ¶¶ 1-38]**

17.   The Complaint in the Ad.net Action also includes the following allegations and requests for relief:

¶ 1. For money damages in the sum or sums to be ascertained at trial and interest upon such sum at the legal rate until paid;

¶ 2. For costs of suit herein and attorneys' fees as permitted by law; . . .

¶ 5. For such other and further relief as the court may deem

proper. **[Exhibit "2," p. 11/16]**

## AD.NET ACTION ALLEGES POTENTIALLY COVERED EMPLOYMENT CLAIMS

18.    The Ad.net Action Claimants allege that the Insureds sought to enforce and enforced illegal non-compete Employment Agreements with the individual plaintiffs Aragon, Lechner and Schuster in breach of the Insureds' obligations and in depravation of their career opportunities with Ad.net.

19.    The Ad.net Action additionally alleges the alleged actions of the Insureds is a violation of California Business & Professions Code §17200 because the acts and practices of the Insureds constitute unlawful and unfair business practices, and unfair competition within the meaning of that statute.

20.    The Ad.net Action seeks both money damages and non-monetary relief for the alleged conduct of the Insureds.

21.    The Ad.net Action is an Employment Claim against the Insureds, within the Policy definition of that term because the Ad.net Action is "a civil proceeding commenced by service of a complaint or similar pleading… against an Insured by or on behalf of or for the benefit of a Claimant … for a Wrongful Employment Practice …" **[Exhibit "1," p. 30/51]**

22.    The individual plaintiffs are Claimants within the Policy definition because they allege that they are "past [or] present … Employee(s) of or applicant for employment with the Insured Organization." **[Exhibit "1," p. 29/51]**

23.    The Claimants' complaints in the Ad.net Action allege Wrongful Acts within the Policy definition as "Wrongful Employment Practices occurring in the course of or arising out of a Claimant's employment, application for employment or performance of services with the Insured Organization." **[Exhibit "1," p. 33/51]**

24.    The Claimants' allegations of Wrongful Employment Practices potentially meet the Policy definition of that term because they are alleged to be breaches of Employment Agreement(s) alleged to exist between the Claimants and the

Insureds, and allegedly have deprived each of the Claimants of a career opportunity as the Insureds' conduct allegedly "has prevented performance of the contracts and employment relationships between plaintiff Ad.net and individual plaintiffs Michael Aragon, Sanford Lechner, and Paul Schuster," or otherwise meet the Policy definition of a Wrongful Employment Practice, including potential claims for employment-related misrepresentation, employment-related defamation, including libel or slander, employment-related disparagement, and negligent employment reference. **[Exhibit "2," ¶ 31]**

## THE CLAIMS WERE FIRST MADE
## DURING TRAVELERS POLICY PERIOD

25.    The Travelers Policy covers an "Employment Claim first made during the Policy Period [of January 10, 2024 to January 10, 2025] …for a Wrongful Employment Practice." **[Exhibit "1," p. 29/51]**

26.    The Claim against the Insureds was first made when the complaint in the Ad.net Action was filed in the Superior Court on July 24, 2024, well within the Travelers Policy period.

## TRAVELERS' ADMISSION OF DUTY TO DEFEND

27.    After the Ad.net Action was filed in the Superior Court, the Insureds gave timely notice of the suit to Travelers.

28.    On October 7, 2024 Travelers agreed to defend the Ad.net Action under a reservation of rights. A copy of that letter is attached as **Exhibit "3."**

29.    Travelers' October 7, 2024 letter admitted that "the Complaint qualifies as a Claim making allegations of Wrongful Employment Practices against an Insured." **[Exhibit "3," p. 2/6]** Travelers further admitted that:

> The Complaint constitutes a Claim within the meaning of the Policy. It alleges one or more Wrongful Employment Practices by an Insured. Accordingly, Travelers agrees to defend its Insured(s) in this matter subject to rights it

reserves under the Policy. Travelers has retained the following law firm to represent and defend Web Design, Ad Media and Ad.Com Interactive Media: Gordon, Rees, Scully & Mansukhani. **[Exhibit "3," p. 2/6]**

## TRAVELERS SEEKS TO LIMIT OR AVOID ITS POLICY DUTIES

30.    Travelers' October 7, 2024 letter asserts:

Travelers will afford coverage for this Claim subject to the express terms and conditions of the Policy and reserves its rights under the Policy as set forth in this letter.

. . .

Travelers disclaims coverage under the Employment Practices Liability Insuring Agreement for Loss arising out of allegations which do not constitute Wrongful Employment Practices such as the claims for unfair competition. In addition, we reserve the right to withdraw from the defense of this matter in the event that all Claims for Wrongful Employment Practices are resolved or dismissed, including but not limited to via settlement, motion practice, bifurcation, dismissal with or without prejudice.

. . .

Only the Individual Plaintiffs meet the definition of "Claimant" as to trigger the Employment Practices Insuring Agreement. Ad.net, Inc. does not qualify as a Claimant and therefore, we reserve the right to disclaims coverage (defense and indemnity) for Loss based on Ad.net's claims against Web Design.

. . .

Travelers reserves its right to disclaim liability for any damages that do not qualify as Loss within the meaning of the Policy. **[Exhibit "3," pp. 2-4/6]**

31. Travelers further asserted in its October 7, 2024 letter:

Claims for equitable relief fall under Exclusion B.1., and are covered for Defense Expenses only. Accordingly, we reserve our rights to disclaim indemnity coverage for Loss, other than Defense expenses, under the terms of Exclusion B.1 of the Employment Practices Liability coverage.

. . .

[P]ursuant to Exclusion B.2, Loss based on Claims seeking damages pursuant to an Employment Agreement is covered for Defense Expenses only. Accordingly, we reserve our rights to disclaim indemnity coverage for Loss, other than Defense expenses, under the terms of Exclusion B.2 of the Employment Practices Liability coverage.  **[Exhibit "3," p. 5/6]**

32. Travelers further states in the October 7, 2024 reservation of rights letter:

Travelers is providing a defense to its Insured(s) in this matter under a full reservation of rights, including but not limited to those stated above. Travelers' duty to defend this Claim may be extinguished at some point in the future if it is determined conclusively that no coverage exists for this matter under the Policy. Also, Travelers reserves the right to seek reimbursement to the extent permitted by law for costs incurred to defend this matter, if it is conclusively determined that no coverage is available under the Policy. Further, Travelers reserves its right under the Policy to

1    assert that the coverage afforded hereunder is excess of any

2    other applicable insurance. **[Exhibit "3," p. 5/6]**

3    33.    The Travelers Policy is "self-liquidating," providing "burning" coverage

4    limits which means that the policy limit for any settlement or indemnity is reduced by

5    defense expenses.

6    <u>**TRAVELERS HAS CREATED A CONFLICT OF INTEREST**</u>

7    <u>**AND A RIGHT TO INDEPENDENT DEFENSE COUNSEL**</u>

8    34.    Travelers has created a conflict of interest with its insured by its assertion

9    of reservation of rights that are intended to minimize defense expenses and avoid any

10   indemnity or settlement obligation. Under Travelers' open-ended reservation of rights,

11   any information developed by appointed defense counsel can be used by Travelers to

12   deny coverage, whether or not the information is used in the litigation. Certainly, the

13   appointed defense counsel would be in a position to develop, or not develop, defense

14   evidence and arguments that can be determinative of the right to coverage when the

15   facts upon which coverage depends are at issue in the case being defended. Under

16   such circumstances, the Insureds are entitled to independent counsel.

17   35.    In order to further its financial interests in contrast with the interests of its

18   insured, Travelers' appointed defense counsel is in a position to employ strategy or

19   tactics to establish that all claims for damages are treated as claims excluded from

20   settlement or indemnity coverage and which require minimized defense expense,

21   while using up policy limits on defense activities that do not lead to a settlement of the

22   case.

23   36.    The Insureds each have an interest in receiving an adequate defense

24   without the potential for a counsel with a conflict of interest for the claims against

25   them in the Ad.net Action.

26   37.    Travelers has a conflict of interest because the outcome of the coverage

27   issue is dependent upon the outcome of the Ad.net Action and the way the facts are

28   developed so as to establish either a covered or a non-covered outcome.

38.     Travelers asserts that it appointed defense counsel while reserving broad rights to end the defense, limit the defense, avoid settlement or indemnity payment, and obtain reimbursement from the Insureds for defense expenses.

39.     Travelers' reservation of rights letter asserted that it could and would raise "any additional terms, conditions and exclusions as defenses to coverage should they later be determined to apply," leaving itself free to assert any reason it might claim later to avoid Policy obligations to the detriment of its insured. **[Exhibit "3," p. 6/6]** Travelers' open ended reservation of rights, together with its appointment of defense counsel with obligations to and controlled by Travelers created an opportunity to conduct the defense in a way that would benefit the insurer but not the insured.

40.     Counsel appointed by Travelers to represent its Insureds WDCS and Ad.com owes a duty to both Travelers, who is paying defense costs and controlling the defense activities, and also to the Insureds. The conflicting interests of Travelers and the Insureds, especially as set forth in Travelers' reservations of rights letters creates a significant risk that counsel appointed by Travelers will not be able to act in the Insureds' best interests in the course of representation in the Ad.net Action.

41.     Travelers has and had a duty to provide independent counsel to its Insureds WDCS and Ad.com because of Travelers' ethical conflicts of interest. Despite such duty, however, Travelers has failed to inform its Insureds of their right to independent counsel and has further unreasonably continued to deny any such right.

## TRAVELERS' DUTY TO DEFEND INCLUDES STRATEGICALLY DEFENSIVE AFFIRMATIVE CLAIMS CONDUCTED AGAINST THE INSUREDS' LIABILITY IN THE AD.NET ACTION

42.     By letter emailed to Travelers on November 19, 2024, WDCS and Ad.com informed and/or reminded Travelers that the scope of its duty to defend extends to paying litigation expenses reasonably incurred by the defendant insureds in pursuing strategically defensive claims conducted against the Insureds' liability in the Ad.net Action. A copy of the November 19, 2024 letter is attached as **Exhibit "4."**

Complaint

43.    In the November 19 letter, the Insureds reminded Travelers of such scope of defense and advised of two separate suits between WDCS and individual plaintiffs from the Ad.net Action which are strategically defensive to the Ad.net Action. As stated in the letter, "[t]he first of the two suits was filed by Web Design against Sanford Gregg Lechner a/k/a Sandy G. Lechner in The Circuit Court of the 17th Judicial Circuit for Broward County, Florida, Case No. CACE-24-009288, *Web Design & Consulting Services, Inc. v. Aragon* (hereinafter the 'Florida Action')." [**Exhibit "4," p. 1/11**] A copy of the Florida Action Complaint was attached to the email with the letter.

44.    The November 19 letter further advised Travelers that the second suit was filed by insureds WDCS and Ad.com against Michael Aragon in the United States District Court for the District of Maine, Case No. 2:24-cv 00249-NT, *Web Design & Consulting Services, Inc. v. Aragon* (hereinafter the "Maine Action"). [**Exhibit "4," pp. 1-2/11**] The letter noted that Mr. Lechner and Mr. Aragon are each plaintiffs in the Ad.net Action. [**Exhibit "4," pp. 1-2, 6/11**] A copy of the active First Amended Complaint in the Maine Action was also attached to the letter.

45.    As explained in the November 19 letter, the Claimants filed the Ad.net Action on July 25, 2024, shortly after WDCS and/or Ad.com filed the Florida Action (July 2, 2024) and Maine Action (July 12, 2024). [**Exhibit "4," p. 6/11**] The California Action was a clear attempt to intimidate the insureds and thwart their lawsuits against Aragon and Lechner. The Insureds further explained that contrary to plaintiffs' allegations in the Ad.net Action, WDCS and Ad.com are not attempting to enforce non-compete agreements against former employees Lechner and Aragon. Rather, in the Maine and Florida actions, they are pursuing claims against Lechner and Aragon for misappropriation of trade secrets and confidential information, including claims for violation of Confidentiality and Non-Solicitation Agreements that preclude using confidential customer lists and trade secret information to solicit WDCS's customers.

Complaint

46.    As the Insureds summarized in the November 19, 2024 letter: It is well-established under California law that an insurer's duty to defend a potentially covered action extends to paying for the insured's strategically defensive litigation expenses which are conducted against the insured's liability in the potentially covered action. *See, e.g., Aerojet-General Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 63 (1997) (applying objective test to determine whether expenses "would be incurred against liability by a reasonable insured under the same circumstances."); *Barratt American, Inc. v. Transcontinental Ins. Co.*, 102 Cal. App. 4th 848, 863 (2002) (finding issue is whether "a reasonable insured would have engaged in a similar defense strategy"); *My Choice Software, LLC v. Travelers Cas. Ins. Co. of Am.*, No. SACV 19-680 JVS (KESx), 2021 U.S. Dist. LEXIS 59763, at *24 (C.D. Cal. Mar. 17, 2021) ("MyChoice's affirmative claims were necessarily defensive to True Tech's covered cross-complaint allegations by seeking to prove that the statements of misappropriation, theft, and sale of illicit software keys were true."); *KLA-Tencor. v. Travelers Indem. Co.*, 2004 U.S. Dist. LEXIS 15376, at *12-13 (N.D. Cal. Aug. 4, 2004) (Court applied objective test to determine insured's strategy of showing that a patent was valid, where two underlying patent infringement suits and responsive counterclaims were intertwined with the successful defense of disparagement counterclaims, was "not an unreasonable strategy"). It is of no moment whether that defensive activity offers some additional benefit to the insured. *Barratt* at 860; *Aerojet* at

62 (holding defense expenses may do "double duty.").

[**Exhibit "4," p. 2/11**]

47.    The November 19 letter provided a detailed review of the relevant case authority establishing the standard for considering whether an affirmative claim is "conducted against liability" and included within the scope of defense. [**Exhibit "4" pp. 2-6/11**]. For example, the Insureds cited *Hewlett-Packard Co. v. AceProp. & Cas. Ins. Co.*, No. C-99-20207 JW, 2006 U.S. Dist. LEXIS 109538, at *217 (N.D. Cal. Dec. 4, 2006) which explained that relevant cases required an inquiry into the reasonableness and the necessity of the defense strategy to minimize liability, expenses, and a cost-benefit analysis of that strategy. [**Exhibit "4," pp. 3, 5, 9/11**] Specifically, the court in *Hewlett-Packard Co. v. Ace Prop. & Cas. Co.* stated the following test for addressing coverage for affirmative claims:

> The relevant cases and the Court's orders require that: (1) the strategy amount to a reasonable and necessary effort to avoid or at least minimize liability; (2) the expenses incurred pursuant to the strategy are reasonable and necessary to avoid or minimize liability, which requires a connection between the strategy and the expenses conduct/strategy; [and] (3) the benefits of the strategy are worth the cost of the strategy. (*Hewlett-Packard Co. v. Ace Prop. & Cas. Ins. Co.* at *229.) [**Exhibit "4," p. 3/11**]

48.    The November 19 letter further discussed *Legion Partners Asset Mgmt., LLC v. Underwriters at Lloyd's London*, 2021 Del. Super. WL 6621168, LEXIS 618, *19-23 (Sept. 30, 2021), citing *Hewlett-Packard Co. v. Ace Prop. & Cas. Co.,* 2006 U. S. LEXIS 109538 at 217 (N.D. Cal. June 12, 2008), in which the court discussed and adopted the three-part "conducted against liability" test under California law that was set forth in *Hewlett-Packard.* [**Exhibit "4," p. 5/11**]

49.    As discussed in the November 19 letter, the court in *Legion* summarized

the test for determining whether an affirmative claim is "conducted against liability" as requiring "an inquiry into the reasonableness and the necessity of [1] the defense strategy to minimize liability, [2] expenses, and [3] a cost benefit analysis of that strategy." *Id.* at \*19. Applying this test, the *Legion* court found that the insured entity's costs for pursuing its arbitration demand against a former employee who had filed a separate lawsuit in Los Angeles Superior Court, arising out of the same facts, was "strategically defensive" to minimize the insured's liability both for the covered claims alleged in the separate LASC suit and similar allegations later asserted by the employee in his arbitration counterclaim. *Id.* at \*22–23. The *Legion* court rejected the insurer's arguments that its duty to the insured did not extend to any affirmative matters in the arbitration. *Legion, supra,* at \*20–21. "Although the Arbitration Demand was a separate claim of relief from the covered [related action], the factual allegations raised in the Arbitration Demand involved at least some of the same events as those in the [related action]." *Id.* The *Legion* court further explained that it would unreasonably "elevate form over substance" for an insurer to refuse to pay for the costs of strategically defensive claims that would be covered if filed by the insured in a compulsory counterclaim in the Superior Court action, but not covered because the insured initiated its affirmative claims first, in a separate forum, before the opposing party filed its potentially covered counterclaim. *Legion, supra,* at \*23. [**Exhibit "4," pp. 5-6/11**]

50.    In the November 19 letter, the Insureds further explained why the Florida and Maine actions satisfied the "conducted against liability" test. [**Exhibit "4" pp. 2-11/11**] The scope of Travelers' duty to defend Web Design and Ad.com in the Ad.net Action extends to payment of its insureds' litigation costs incurred in the "strategically defensive" Florida Action and Maine Action, where each of those actions were conducted against the insureds' liability in the Ad.net Action.

51.    The Florida and Maine actions are "strategically defensive" to the Ad.net lawsuit in California and pursuing such claims is reasonable and appropriate. [**Exhibit**

**"4," pp. 4-6/11]** All the causes of action in the aforementioned actions are based on the same alleged facts and simply allege different methods of recovery based on the factual allegations. [**Exhibit "4," pp. 4-6/11]** Winning the cases for misappropriation of trade secrets and breach of confidentiality agreement is direct proof that the claims are legitimate protections of confidential trade secret information, not improper enforcement of non-compete agreements.

52.    Prior to Claimants filing the Ad.net lawsuit against the Insureds on July 24, 2024 in California, the Insureds filed lawsuits against the Ad.net individual plaintiffs/cross-defendants Sanford Lechner in Florida State Court (July 2, 2024) and Michael Aragon in the United States District Court for Maine (July 12, 2024) alleging misappropriation of trade secrets and confidential information, including claims for violation of Confidentiality and Non-Solicitation Agreements that preclude using confidential customer lists and trade secret information to solicit Web Design's customers. The lawsuits were filed in those jurisdictions because Lechner and Aragon lived there and the Insureds reasonably sought to secure jurisdiction over their former employees in order to protect their trade secrets and confidential information.

53.    Once the Ad.net lawsuit was filed against the Insureds, continued pursuit of the Florida and Maine Actions became "strategically defensive" for several reasons. **First**, the plaintiffs in the Ad.net lawsuit falsely asserted that the Insureds were wrongfully seeking to enforce non-compete agreements, rather than properly enforcing legitimate claims for trade secret misappropriation and breach of confidentiality agreements. The best defense to the allegations in the Ad.net complaint is for the Insureds to continue with and prevail on their claims against Lechner and Aragon in the Florida and Maine actions. **Second,** as detailed in the November 19, 2024 letter, protection of trade secrets is a recognized exception to statutory prohibitions against employment agreements limiting non-solicitation of customers. **Third**, establishing that the individual plaintiffs Lechner, Aragon and Schuster misappropriated trade secrets, breached enforceable confidentiality agreements, and

used trade secrets and confidential customer lists to interfere with the Insureds' contractual relations supports the Insureds' affirmative defenses in the Ad.net lawsuit, including unclean hands and equitable estoppel.

## TRAVELERS REFUSED TO PAY FOR DEFENSIVE CROSS-COMPLAINT FILED BY APPOINTED COUNSEL

54.     On January 15, 2025, appointed counsel for the Insureds filed a strategically defensive Cross-Complaint by Web Design and Ad.com against the Plaintiffs/Cross-Defendants in the Ad.net Action (hereinafter "Cross-Complaint") stating eight causes of action each based upon the same alleged set of facts regarding cross-defendants/plaintiffs' misappropriation of trade secrets and confidential information, including claims against individual former employee plaintiffs Aragon, Lechner and Schuster for violation of Confidentiality and Non-Solicitation Agreements that preclude using confidential customer lists and trade secret information to solicit WDCS and Ad.com's customers. These allegations are all directly defensive to the Ad.net Action plaintiffs' claims for (1) Statutory Action for Damages and Injunctive Relief, Bus. & Prof. Code 16600 *et seq*.; (2) Unfair Competition; (3) Intentional Interference with Contractual Relations; and (4) Declaratory and Injunctive Relief, all of which allege that Web Design and Ad.com have attempted and are continuing to attempt to enforce non-compete agreements against the individual plaintiffs which agreements are alleged to be unenforceable and illegal in California under California Business & Professions Code section 16600(a).

55.     Nonetheless, even though WDCS had fully paid the $10,000 policy retention to appointed counsel Gordon Rees for its defense of the Ad.com Action, Travelers unreasonably refused to pay for the strategically defensive and compulsory Cross-Complaint.

56.     Within a short time thereafter, defense counsel James Fazio emailed the Insureds on January 23 to advise that Travelers refused to pay for costs related to the compulsory Cross-Complaint. Accordingly, Gordon Rees stated that if the Insureds

wanted the firm to handle the Cross-Complaint in connection with defending against the complaint in the Ad.net Action, the Insureds would have to agree to pay the firm's fees for the Cross-Complaint and enter into a separate engagement agreement with the firm. Otherwise, the firm stated the Insureds could voluntarily dismiss the cross-claims without prejudice while they pursued their affirmative complaints in Florida and Maine.

## PLAINTIFFS DEMAND TRAVELERS PAY FOR STRATEGICALLY DEFENSIVE CROSS-COMPLAINT AND NEW YORK LAWSUIT

57.     On January 30, 2025, the Insureds sent two letters to Travelers. The First letter explained why Travelers owed a duty to pay for the strategically defensive Cross-Complaint which is asserted and conducted against the Insured's liability in the Ad.net Action.

58.     The letter further responded to Travelers' request for information about the complaint filed by the Insureds in the Supreme Court of the State of New York County of Westchester against Paul Schuster (Index No. 55015/2025) ("the New York Action"), a plaintiff in the Ad.net Action. Just as with the Florida Action and Maine Action, the New York Action is strategically defensive because it is conducted against the Insureds' liability in the Ad.net Action. Thus, as Plaintiffs had explained to Travelers in a January 24 email, the analysis is the same for the New York Action as is explained in detail in the November 19, 2024 letter concerning Travelers' duty to pay for the reasonable and strategically defensive litigation costs in the Florida Action and Maine Action. [**Exhibit "4"**] As with the Florida and Maine actions, the New York Action asserts misappropriation of trade secrets and confidential information under the Misappropriation of Trade Secrets cause of action. The New York Action Complaint asserts "The Company's confidential information constitutes trade secrets under New York law, . . . Schuster misappropriated the Company's trade secrets by downloading them without authorization and using them for the benefit of AD.NET Inc., a direct competitor.") A copy of the January 30, 2025 "conducted against

liability" letter is attached as **Exhibit "5".** The Insureds included a copy of the New York Action complaint with the letter.

59.    The second letter the Insureds sent to Travelers on January 30, 2025 explained why the Insureds are entitled to independent counsel in the Ad.net Action and related strategically defensive lawsuits. The letter further explained why the Gordon Rees appointed counsel's offer to bill WDCS and Ad.com separately for the Cross-Complaint, while billing Travelers for the defense of the Ad.net complaint, or else it would dismiss the Cross-Complaint without prejudice, created a conflict of interest further requiring Travelers to pay for independent counsel and potentially require Gordon Rees to withdraw as defense counsel. A copy of the January 30, 2025 independent counsel letter is attached as **Exhibit "6".**

60.    In response to the letters, Travelers sent a letter on February 5, 2025 denying any duty to pay for independent counsel and continuing to deny its duty to fully pay for the Cross-Complaint or pay any of the strategically defensive litigation costs in the Florida, Maine and New York lawsuits. Travelers failed to address the substantial case authority cited by the Insureds in support of its request for payment of independent counsel and strategically defensive litigation costs incurred to pursue affirmative claims conducted against the Insureds' liability. A copy of the February 5, 2025 letter is attached as **Exhibit "7."**[5]

61.    In response to Travelers's February 5, 2025 Letter, the Insured sent a letter dated February 7, 2025, explaining that Travelers must fund the complete cross-claim and three state suits as Travelers has an obligation to defend "strategically defensive" claims. The letter further explained why the Florida, Maine, and New York lawsuits are all "strategically defensive" to the California lawsuit. The February 7, 2025 letter further explained why Travelers' cases cited in its February 5, 2025 letter, **Exhibit "7,"** are all readily distinguishable. A copy of the February 7, 2025 response

---

[5] **Exhibit "7"** is redacted to protect a communication protected from disclosure under 28 U.S.C. App. Fed. R. Evid. Rule 408.

letter is attached as **Exhibit "8"**.

**COUNT I**

**DECLARATORY JUDGMENT DUTY TO DEFEND
AND DUTY TO PROVIDE INDEPENDENT COUNSEL**

62.   Plaintiffs WDCS and Ad.com incorporate the allegations in the above paragraphs of this Complaint as though fully alleged herein.

63.   A valid contract exists between the Insureds and Travelers, namely the Policy.

64.   The Insureds have fully performed all of the obligations and conditions to be performed by them under the Policy or have been excused from performing same as a result of Travelers' breach of its duties.

65.   WDCS has paid premiums owed under the Policy each month the Policy has been in force.

66.   By selling the Policy and taking payments from WDCS, Travelers agreed to provide a defense, settlement and indemnity for suits seeking damages for "wrongful employment practice" claims as defined in its Policy.

67.   The underlying Ad.net Action alleges facts implicating coverage under the Policy as "wrongful employment practice" thereby triggering Travelers' obligation to defend the Insureds in the Ad.net Action.

68.   Travelers has wrongfully failed to fully and properly defend the Insureds in the Ad.net Action under its Policy benefiting the Insureds.

69.   Travelers has breached its duty to defend by wrongfully refusing to acknowledge its duty to pay and provide for independent defense counsel to represent the Insureds in the Ad.net Action and the related strategically defensive Florida, Maine and New York actions.

70.   Travelers has further unreasonably refused to pay the full costs for the Insureds prosecuting their compulsory and strategically defensive Cross-Complaint

against the plaintiffs/cross-defendants in the Ad.net Action.

71.    Travelers has also refused to acknowledge its duty to pay for and has refused to pay for reasonable post-notice litigation expenses incurred in the strategically defensive Florida, Maine, and New York lawsuits filed against plaintiffs/cross-defendants Lechner, Aragon and Schuster, respectively, and conducted against the Insureds' liability in the Ad.net Action.

72.    An actual bona fide controversy exists between the Insureds WDCS and Ad.com, on the one hand, and Travelers, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties regarding the potential for coverage under the Policy, Travelers' duty to fully defend the Insureds in the Ad.net Action by paying for independent defense counsel, the amount of defense expenses owed by Travelers, Travelers' duty to timely pay defense fees and costs, that Travelers has breached its contract with WDCS and Ad.com by failing to properly defend them in the Ad.net Action, that Travelers must timely reimburse and pay WDCS and Ad.com for all reasonable post-tender defense expenses, in excess of the policy retention, incurred in connection with the Ad.net Action, including the costs of the Cross-Complaint and other pending strategically defensive claims filed against the individual cross-defendants/plaintiffs Michael Aragon, Sanford Lechner and Paul Schuster in Maine, Florida and New York, respectively, plus prejudgment interest at the applicable legal rate from the date of each defense invoice, and a judicial declaration that Travelers has breached its duty of good faith and fair dealing toward its insureds WDCS and Ad.com and owes Plaintiffs damages for its breach.

## COUNT II

## BREACH OF CONTRACT

73.    Plaintiffs WDCS and Ad.com incorporate the allegations in the above paragraphs of this Complaint as though fully alleged herein.

74.    A valid contract exists between Travelers and its Insureds, WDCS and

Ad.com, namely the Policy.

75.    Plaintiffs have fully performed all of the obligations and conditions to be performed by them under the Policy, or have been excused from performing them as a result of Travelers' breach of its duty to defend.

76.    By selling the Policy, Travelers agreed to provide a defense, settlement and indemnity for suits seeking damages for "wrongful employment practice" claims as defined in its Policy.

77.    Plaintiffs WDCS and Ad.com contend that the underlying Ad.net Action alleges facts implicating "wrongful employment practice" claims as defined in its Policy, thereby triggering Travelers' obligation to defend Plaintiffs which it has admitted.

78.    Travelers has refused to pay and has failed to pay reasonable defense expenses for independent defense counsel while improperly depleting policy limits by paying its appointed defense counsel, despite the conflict of interest which makes the work of the appointed counsel ineffective for the defense of the Insureds.

79.    Travelers has further breached its contract by refusing to fully pay for the Insureds' Cross-Complaint filed in the Ad.net Action.

80.    Travelers has further breached its contract by refusing to timely reimburse and pay WDCS and Ad.com for all reasonable post-tender defense expenses, in excess of the policy retention, incurred in connection with the Ad.net Action, including the costs of the Cross-Complaint and other pending strategically defensive lawsuits filed against the individual cross-defendants/plaintiffs Michael Aragon, Sanford Lechner and Paul Schuster in Maine, Florida and New York, respectively.

81.    Travelers' breaches of its contractual obligations have caused Plaintiffs damages.

82.    As a result of its breaches of contract, Plaintiffs seek compensatory damages, including but not limited to unreimbursed defense costs plus prejudgment

interest at the applicable legal rate from the date of each defense invoice.

## COUNT III

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

83.    Plaintiffs, by this reference, incorporate each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged herein.

84.    An implied duty of good faith and fair dealing is implicit in every contract, including insurance contracts.

85.    This duty confers upon the insurer a duty to act reasonably when determining whether to accept or deny a claim. Travelers' repeated refusal to defend its Insureds was not reasonable.

86.    Failure to substantiate a basis for the asserted denial that overlooks particular policy provisions does not meet the test of reasonableness, nor does the failure to provide a factual basis for the assertion of exclusions.

87.    A valid contract exists between Plaintiffs and Travelers, namely, the Policy.

88.    By issuing and delivering the Policy and taking payments from WDCS, Travelers agreed to provide a defense for suit seeking damages for "wrongful employment practices" as defined in the Policy

89.    The Ad.net Action alleges facts implicating coverage under the Policy as "wrongful employment practices," thereby triggering Travelers' obligation to defend its insureds WDCS and Ad.com in the Ad.net Action.

90.    No exclusions would bar Travelers from defending the Insureds in the Ad.net Action.

91.    Travelers has acknowledged the potential for coverage and that it has an obligation to defend the Insureds in the Ad.net Action.

92.    Travelers is obligated under the Policy to pay attorneys' fees, costs, and other expenses that its Insureds, WDCS and Ad.com, incur in the defense of the Ad.net Action by defense counsel without a conflict of interest.

93.    Travelers unreasonably asserts that it will only defend the Insureds using appointed defense counsel which has an unavoidable conflict of interest in representing both Travelers and the Insureds.

94.    Travelers unreasonably has refused to pay for independent defense counsel in the Ad.net Action.

95.    Travelers has unreasonably refused to fully pay for the Insureds' strategically defense Cross-Complaint filed by appointed counsel and conducted against the Insureds' liability in the Ad.net Action.

96.    Travelers has further refused to pay for the Insureds' post-tender litigation costs incurred in excess of the Policy retention in the strategically defensive lawsuits filed in the Florida Action, Maine Action and New York Action, all of which are reasonable and conducted against the Insureds' liability in the Ad.net Action.

97.    Travelers further unreasonably delayed in responding to the Insureds' request for coverage in the Florida Action, Maine Action and New York Action and has failed to substantively respond to the substantial case law cited in the Insureds' letters supporting their right to coverage for the affirmative claims conducted against the Insureds' liability in the Ad.net Action.

98.    Travelers' actions have been unreasonable and a breach of its implied covenant of good faith and fair dealing with its Insureds.

99.    The Insured Plaintiffs have suffered and will suffer damages because of Travelers' breach of its implied covenant of good faith and fair dealing, including attorney's fees incurred to obtain policy benefits wrongfully withheld by Travelers.

100.    Plaintiffs seek recovery of compensatory damages caused by Travelers' breach of the implied covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant Travelers as follows:

1.    A judicial declaration that Travelers had and has a duty to defend WDCS

Complaint

and Ad.com in the underlying Ad.net Action under the Policy;

2.      A judgment that Travelers has breached its contract duties;

3.      A judgment that Plaintiffs WDCS and Ad.com are and were entitled to independent defense counsel with their reasonable defense expenses promptly paid by Travelers, without deduction from Policy limits for the expenses of conflicted appointed defense counsel;

4.      A determination and award of general damages consisting of all reasonable defense expenses and settlement expenses incurred by Plaintiffs in defense of the underlying Ad.net Action, including defense costs incurred to prosecute strategically defensive affirmative claims against the plaintiffs in the Ad.net Action, including the Cross-Complaint in the Ad.net Action and the defensive Florida, Maine and New York lawsuits filed against Sanford Lechner, Michael Aragon and Paul Schuster, respectively, conducted against the Insureds' liability in the Ad.net Action, and any consequential damages;

5.      An award of pre-judgment interest accruing from the date of each defense invoice or any settlement payment at the statutory interest rate of 10% per annum;

6.      An order requiring Travelers to pay ongoing reasonable defense expenses within thirty days of the defense invoice;

7.      A determination that Travelers has breached its implied covenant of good faith and fair dealing;

8.      An award of damages against Travelers for its breach of its covenant of good faith and fair dealing;

9.      An award of WDCS and Ad.com's reasonable attorneys' fees incurred in this lawsuit;

10.     An award of costs of suit herein; and

11.     Such other and further relief as this Court may deem just and proper.

Dated:  February 11, 2025

**GAUNTLETT & ASSOCIATES**

By:____/s/ James A. Lowe_____
        David A. Gauntlett
        James A. Lowe

Attorneys for Plaintiffs
WEB DESIGN AND CONSULTING
SERVICES, INC. and AD.COM
INTERACTIVE MEDIA, INC.

## JURY DEMAND

In accordance with Fed. R. Civ. P. 38, Plaintiffs hereby request a trial by jury of all issues triable by a jury.

Dated: February 11, 2025

**GAUNTLETT & ASSOCIATES**

By:____/s/ James A. Lowe_____
        David A. Gauntlett
        James A. Lowe
Attorneys for Plaintiffs
WEB DESIGN AND CONSULTING
SERVICES, INC. and AD.COM
INTERACTIVE MEDIA, INC.